**YURMAN DESIGN, INC., and Yurman Studios Inc., Plaintiffs,**

v.

**GOLDEN TREASURE IMPORTS, INC., et al., Defendants.**

**No. 00 Civ.0202 JGK.**

United States District Court, S.D. New York.

Aug. 5, 2003.

Maxim H. Waldbaum, Xuan-Thao N. Nguyen, Pryor, Cashman, Sherman & Flynn, LLP, Emily M. Spectre, Salans, Hertzfield, Heilbronn, Christy & Viener, New York City, for Plaintiffs.

Ainslee Ann Schreiber, Furgang & Adwar, LLP, Jonathan L. Rosner, Marianne Fusto Murray, Rosner & Murray, New York City, for Defendants.

### *OPINION AND ORDER*

KOELTL, District Judge.

The plaintiffs, Yurman Design, Inc. and Yurman Studios, Inc. (collectively "Yurman") have brought this action alleging, among other things, claims of trade dress infringement and copyright infringement against the defendants, Goldman Treasure Imports, Inc. d/b/a Alisa Designs ("Alisa") and Menegatti Fratelli, S.P.A. ("Megegatti"). The plaintiffs have alleged that the defendants have infringed the protected trade dress and copyrights on various jewelry products manufactured by the plaintiffs, specifically, jewelry products that incorporate cable designs along with other artistic elements.

The defendants have moved for summary judgment on the plaintiffs' claims for trade dress infringement, arguing, among other things, that the plaintiffs' trade dress is functional and that the plaintiffs

have failed to articulate specifically the jewelry designs that they seek to protect as trade dress. In addition, the defendants have moved for summary judgment on the plaintiffs' claims for copyright infringement, arguing that under the applicable standard of similarity necessary for claims of infringement, there is an insufficient similarity between the plaintiffs' protected jewelry designs and the jewelry produced by the defendants.

The plaintiffs have moved for partial summary judgment dismissing any defense raised by the defendants that the plaintiffs' copyrights are invalid and striking the defendants' seventh affirmative defense of "unclean hands".[1]

The plaintiffs in their Fourth Amended Complaint alleged six causes of action, including a claim for: (1) copyright infringement, in violation of 17 U.S.C. § 106; (2) trade dress infringement, in violation of 15 U.S.C. § 1125(a); and state law causes of action for (3) deceptive acts and practices; (4) unfair competition; (5) misappropriation; and (6) unjust enrichment. The defendants have moved for summary judgment on the claims for copyright infringement and trade dress infringement.

### I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its

---

1. The defendants asserted as their Second, Third, and Fourth defenses that the plaintiffs' copyright infringement claim is "based upon copyrights registrations that are invalid...." (Answer ¶ 8–10.) The plaintiffs indicated the defendants had made some attempts to withdraw these defenses, but because the defendants indicated that they may reassert such defenses, the plaintiffs have moved for summary judgment with respect to the issue of the validity of their copyrights.

burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir.1998) (collecting cases).

Both the plaintiffs and defendants filed a statement of undisputed facts as required by Local Rule 56.1(a). The defendants' statement of undisputed facts does not contain undisputed facts, but is instead a collection of legal arguments. In addition, the defendants have failed to file a statement that either admits or denies any of the facts that the plaintiffs set forth as being undisputed, as required by Local Civil Rule 56.1(b). The defendants' failure to respond or contest the facts set forth by the plaintiffs in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed. *See* Local Civil Rule 56.1(c); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998); *United States v. All Right, Title and Interest in Real Property and Appurtenances*, 77 F.3d 648, 657–58 (2d Cir.1996); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F.Supp.2d 527, 534 (S.D.N.Y.2000), *aff'd* 283 F.3d 73 (2d Cir. 2002). The Court, consistent with the decision of the Court of Appeals in *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003), has conducted an independent review of the plaintiffs' allegedly undisputed facts that are cited below and found them to be adequately supported by the record in this case.

Beginning in or about 1982, Yurman began designing, manufacturing, promoting, and marketing a line of jewelry products that incorporate a cable design, together with other innovative and creative artistic elements. (Pls.' Rule 56.1 Stmt. ¶ 4.) Since the introduction of its cable designs, Yurman has spent enormous amounts of time, resources, and effort to cultivate a reputation for producing jewelry of the finest design, materials and craftsmanship, resulting in global recognition by consumers and the jewelry designs. (Pls.' Rule 56.1 Stmt. ¶ 5.) Under the direction of its president, David Yurman, a jewelry designer, the plaintiffs have become regarded as a leading jewelry design company. (Fourth Am. Compl. ¶ 8.) The plaintiffs have several signature jewelry collections, many of which incorporate the cable design, along with other elements. (Fourth Am. Compl. ¶¶ 9–10; *see, e.g.*, Fourth Am. Compl. ¶ 15 (noting that the "Channel Collection" "has as a common theme yellow gold collars with colorful semi-precious stones placed on twisted sterling silver cable. The collars are composed of single bands of yellow gold on either side of square cut semiprecious colorful stones. The collars complete a circle around the sterling silver twisted cable that are then shaped into bracelets, necklaces, rings, and earrings.")

Yurman has received federal copyright protection for some of its jewelry designs. (Pls.' Rule 56.1 Stmt. ¶ 6.) The defendants manufacture, import, advertise, distribute and sell jewelry products under the labels "The Torcellato Collection" and "The Satinato Collection" which the plaintiffs allege infringe upon several of the plaintiffs' copyrighted jewelry designs and the plaintiffs protected trade dress in dozens of those designs. (Pls. Rule 56.1 Stmt. ¶¶ 7–10.)

## II.

### A.

The defendants have moved for summary judgment on the plaintiffs' claim for

trade dress infringement. The plaintiffs' claim for trade dress infringement are governed by § 43(a) of the Lanham Act. To establish a claim for trade dress infringement, the plaintiffs must establish (1) ownership of valid and protectable trade dress and (2) the allegedly infringing trade dress is likely to confuse consumers as to the product's source or sponsorship. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 118–19 (2d Cir.2001). With respect to the first element, "trade dress is protected under the Lanham Act if it is not functional and if it is either inherently distinctive or has acquired secondary meaning in the marketplace." *Id.* at 118. The defendants have moved for summary judgment, arguing that (1) the plaintiffs have not appropriately identified any protectable trade dress; (2) the plaintiffs' trade dress is functional; and (3) the plaintiffs cannot establish secondary meaning for their trade dress. The defendants have not moved for summary judgment on the basis of a lack of consumer confusion. For the reasons explained below, with respect to each of the defendants' contentions, summary judgment dismissing the plaintiffs' trade dress claim cannot be granted.

### B.

The defendants first argue, on the basis of the decision by the Court of Appeals in *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir.2001), that the plaintiffs have failed to specifically articulate the trade dress that it seeks to protect, and that the plaintiffs may not seek protection for an entire line of jewelry designs or for the entire line of David Yurman "cable jewelry."

In *Yurman*, the plaintiff, Yurman Design, Inc., who is also a plaintiff in the present action, had argued that "its trade dress could be discerned from an entire product line of 18 different Yurman pieces—eight rings, seven bracelets, and three pairs of earrings." *Id.* at 114. The Court of Appeals found that the plaintiff's trade dress infringement claim under the Lanham Act had to be dismissed because Yurman Design, Inc. had failed to identify the specific elements of its alleged trade dress and because "a plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress." *Id.* at 116.

The defendants argue that the plaintiffs have again failed to identify the specific elements of the trade dress that they seek to protect. This argument has no merit. In the Fourth Amended Complaint, the plaintiffs do not attempt to claim trade dress protection over an entire line of jewelry products without reference to specific elements; rather, the plaintiffs have set out in significant detail all of the various designs as embodied in particular pieces of jewelry, and it is clear that the plaintiffs seek to protect each of these designs individually as trade dress. (*See* Fourth Am. Compl. ¶ 19 (outlining and claiming trade dress protection for twenty four separate jewelry designs as embodied in different and specific pieces of jewelry, including necklaces, earrings and bracelets). The Fourth Amended Complaint specifies the design features that compose the specific and individualized trade dress sought to be protected. In addition, the plaintiffs make clear in their papers in response to the defendants' motion for summary judgment that they no longer are claiming the broad and unifying trade dress that was found to be insufficiently specified by the Court of Appeals, but seek protection of individual designs, and allege infringement of each of those individual designs. Besides the arguments of functionality addressed below, the defendants have not argued that those individual designs are insufficiently specific and rely exclusively on the decision by the Court of the Appeals in *Yurman* to dismiss the plaintiffs' claims. Because the plaintiffs

no longer seek to protect and entire line of products as a singular trade dress, the defendants' reliance on *Yurman* is misplaced, and the defendants' motion on the basis of this argument is denied.[2]

## C.

The defendants also argue that summary judgment is appropriate because the plaintiffs' trade dress is both functional in a utilitarian sense and because it is aesthetically functional. The Court of Appeals has consistently explained that liability under § 43(a) of the Lanham Act may be avoided if the trade dress element sought to be protected is functional. *See Knitwaves, Inc. v. Lollytogs, Ltd. (Inc.),* 71 F.3d 996, 1005–06 (2d Cir.1995). A " 'product feature is functional, and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.' " *Yurman,* 262 F.3d at 116 (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) (internal quotations omitted)). Where trade dress involves an aesthetic feature, that feature is functional "if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *Yurman,* 262 F.3d at 116 (quotations omitted).

■ The defendants first argue that the plaintiffs' trade dress is functional because the cable dress designs sought to be protected have functional uses, namely that the cable designs allow for the creation of lightweight jewelry without sacrificing band strength and without the use of hinges. The defendants base this functionality argument on the existence of a utility patent that the plaintiffs have on a cable used in various products manufactured by the plaintiffs. The Supreme Court has recently explained that

A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection. Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

*TrafFix,* 532 U.S. at 29–30, 121 S.Ct. 1255.

The plaintiffs argue that in this case, the prior patent should not be considered as evidence of functionality because the prior patent covers "Venetian cable" which is not used in any of the jewelry designs for which the plaintiff seeks trade dress protection. The defendants do not respond to this argument, and it is a sufficient basis to

**2.** To the extent that the defendants have argued that even the plaintiffs' attempts to articulate protectible trade dress for the individual designs is insufficiently specific because the plaintiffs have not alleged sufficient source-identifying elements for each of the individual designs, summary judgment could not be granted. There remain genuine issues of fact as to whether the plaintiffs' trade dress contains sufficient source-identifying elements. The plaintiffs have submitted various declarations from people associated with the plaintiffs and individuals who purchase jewelry regularly on behalf of various retailers and which indicate that the elements of the various jewelry designs that the plaintiffs seek to protect are regularly associated by people in the industry and by consumers with the jewelry of David Yurman. (*See, e.g.,* Decl. of Tracy Squillante dated Feb. 12, 2003 at ¶¶ 9–10; Decl. of Charles Evans dated Feb. 13, 2003 ("Evans Decl.") at ¶¶ 8, 13–14 (indicating how and why particular individual jewelry designs have become associated exclusively with Yurman).)

reject the functionality argument raised by the plaintiffs. In addition, the defendants' reliance on the prior patent, even if the patent covered the cable used in the plaintiffs' designs, is insufficient to establish functionality, because, as explained earlier, the plaintiffs do not base their trade dress claims on the mere existence of a cable design. Rather, the plaintiffs' seek trade dress protection on various designs, which incorporate cable, but that are primarily based on a unique arrangement of a cable design with the jewels and other elements of the jewelry. (*See, e.g.,* Fourth Am. Compl. ¶ 19(a) ("These designs are not functional and have acquired distinctiveness and fame from uninterrupted promotion and sale. [The][p]endant design ... and earring design ... have a solitary white pearl set in yellow gold that hangs from a sterling silver bale that is sculpted to look like cable.") Finally, even if the plaintiffs' prior patents were evidence of the functionality of elements of the designs for which the plaintiffs seek trade dress protection, the plaintiffs are able to satisfy the "heavy burden" of showing that the cable element is merely an ornamental or arbitrary element of the jewelry design. The plaintiffs have alleged that the cable element of the Yurman jewelry designs is one of the artistic elements of the overall jewelry design and therefore serves an ornamental purpose. (*See, e.g, id.;* Evans Decl. at ¶ 13(c)-(d).) The aesthetic value of the cable design is arguably more important than any marginal functional benefit and therefore the defendants' motion for summary judgment on the basis of functionality is denied. *See, e.g., Metrokane, Inc. v. Wine Enthusiast,* 160 F.Supp.2d 633, 638 (S.D.N.Y.2001).

■ The defendants also argue that the plaintiffs' jewelry designs are aesthetically functional. This argument also lacks merit. As explained earlier, in order to establish aesthetic functionality, the defendants have to show that extending trade dress protection to the plaintiffs' designs would prevent the defendants from creating alternative jewelry designs that would compete in the marketplace. *See Knitwaves,* 71 F.3d at 1006. The defendants have failed to identify which elements of the specific designs of the plaintiffs are of a kind that preclude effective market competition. In addition, they have failed to come forward with any evidence that extending trade dress protection to the combination of the elements of the plaintiffs' designs, including the use of the cable element, prevents the creation of other jewelry designs that would be competitive. In contrast, the plaintiffs have produced evidence from individuals in the jewelry industry that there are multiple alternative designs available to the defendants that do not require the combination of the elements in the plaintiffs' designs. (*See, e.g.,* Evans Decl. ¶ 19.) On the basis of this record, the defendants have failed to show aesthetic functionality. *Cf. Knitwaves,* 71 F.3d at 1006 (finding defense of functionality unavailing where "Lollytogs has adduced no evidence whatsoever that the number of designs available for 'fall motif' sweaters is limited, and that consequently extension of trade dress protection to Knitwaves' two sweater designs would restrict Lollytogs' ability to produce alternative competitive designs.") The defendants motion for summary judgment on basis of aesthetic functionality is denied.

### C.

■ The defendants also argue that the plaintiffs cannot establish that their designs have secondary meaning. Trade dress has secondary meaning when "the *primary* significance of the [trade dress] in the minds of the consuming public is not the product but the producer," such that the trade dress tends to be associated not just with the goods or services but with a single, though possibly anonymous, source.

*20th Century Wear, Inc. v. Sanmark–Stardust Inc.*, 815 F.2d 8, 10 (2d Cir.1987) (internal quotation marks omitted) (emphasis in original). Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 n. 4 (2d Cir.1997).

The plaintiffs argue that summary judgment should be denied because there are genuine issues of fact with respect to whether their designs have obtained the necessary secondary meaning. Among other things, the plaintiffs point to the evidence of the amount of money they have spent on advertising the Yurman jewelry, and the fact that their products have received substantial media attention and are often plagarized by other jewelry manufacturers. With respect to the expenditures on advertising, the defendants argue that this evidence is insufficient to establish secondary meaning because the plaintiffs have failed to segregate the total advertising expenditures and indicate whether advertising expenses correlate to the specific lines of jewelry that the plaintiffs seek to protect as trade dress. The plaintiffs fail to respond to this argument. However, the defendants have failed to make any argument with respect to the other evidence proffered by the plaintiffs as indicative of secondary meaning, including the evidence of plagarism, media attention, and specific advertisements for specific lines of jewelry. (*See* Decl. of Sue Ann Newberg dated Feb. 12, 2003 at ¶ 12 (noting "[n]ot surprisingly, Yurman's success has created a market for a number of imitators who attempt to copy Yurman's distinctive jewelry design"; Exh. 2 attached to Decl. of Tracy Squillante (collecting articles and other media publicity

regarding Yurman jewelry designs); Decl. of Tracy Squillante at ¶¶ 20–38 & Exhs. 7–25 attached to Squillante Decl. (providing examples of specific advertising for specific lines of jewelry claimed as trade dress by the plaintiffs).) In any event, this evidence is sufficient to establish the existence of genuine issues of fact with respect to the secondary meaning of the plaintiffs' trade dress. The plaintiffs will of course be required to prove at trial the secondary meaning for each of the trade dress designs for which they seek protection. Consequently, the defendants' motion for summary judgment based on a lack of secondary meaning is denied.

### III.

The defendants have moved for summary judgment on the plaintiffs' claim for copyright infringement, arguing that the plaintiffs' jewelry designs are not copyrightable, because they are composed of common elements found in the public domain, and that the plaintiffs cannot establish, as a matter of law, the substantial similarity between the plaintiffs' designs and those of the defendants necessary for a claim of infringement. The plaintiffs have moved for summary judgment on the issue of the validity of their copyrighted jewelry designs.

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir.1996) (citing *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)); *see also ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir.1996).

### A.

With respect to the first element, it is necessary to address the plaintiffs' mo-

tion for summary judgment on the issue of the validity of its designs, because resolution of the plaintiffs' motion may resolve the defendants' argument that the jewelry designs are unprotectable.

The plaintiffs have moved for summary judgment with respect to the validity of the following copyrights, as indicated by their registration numbers and which correspond to specific style designs of Yurman jewelry: (1) VA 894–436, for style No. R06230; (2) VA 894–440 for style No. N06206; (3) VA 771–476 for styles Nos. B06195, B06179, B06219; (4) VA1–024–280 for style No. D06377; (5) VA 913–509 for style No. B4995; (6) VA 1–038–299 for style No. B4425; and (7) VA 1–010–359 for style No. B4260. (*See* Exh. 30 attached to Fourth Am. Compl.) With respect to the first five copyright registrations, the registration certificates were issued within five years of the first publication of the corresponding designs; on the other hand, the certificates for the last two style designs were issued more than five years after the issuance of the corresponding designs. (*See id.*) Because different standards apply to the determination of the validity of the two sets of copyrights, it is necessary to analyze the validity of the first five copyrighted jewelry designs, and then the validity of the remaining two designs.

The first five copyrighted designs are presumed to be valid, because the corresponding registration certificates were issued within five years of the date of the first publication of the copyrighted design. These certificates "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). *See also Boisson v. Banian, Ltd.,* 273 F.3d 262, 268 (2d Cir. 2001) (noting that registration certificates, when issued within five years of the publication of the copyrighted work establish a statutory presumption of the validity of the copyrights and originality of the works);

*Yurman,* 262 F.3d at 109 (same); *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.1997). In addition, the registration certificates establish a statutory presumption that the copyrighted works are original. *Boisson,* 273 F.3d at 268.

This statutory presumption of validity shifts the burden to the defendants to prove that the plaintiffs' copyrights for these first five jewelry designs are invalid. *See Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.1997); *Yurman,* 262 F.3d at 109. The "presumption of validity may be rebutted where *other evidence* in the record casts doubt on the question." *Fonar Corp.,* 105 F.3d at 104 (quotations omitted and emphasis in original). The party contesting the originality of a properly registered copyright must show that "there was such an overwhelming amount of evidence of nonoriginality that reasonable and fair minded men could not have found" the designs to be original. *Yurman,* 262 F.3d at 109 (internal quotations omitted). Evidence that the copyrighted work is copied from work in the public domain or that the work is non-copyrightable may be sufficient to rebut the presumption of validity created by the registration certificate. *Fonar Corp.,* 105 F.3d at 104.

The defendants have not raised any argument that would rebut the presumption of validity of the first five copyrighted designs. The only response that the defendants made in their responsive papers to the plaintiffs' motion was to assert that they still retain the right to rebut any presumption of validity of the copyrighted designs. The plaintiffs have moved for summary judgment specifically to preclude the defendants from attempting to challenge validity of the copyrights at some later point, or during trial. The time for the defendants to produce any evidence in response to the plaintiffs' motion was in response to the plaintiffs' motion. The

defendants' attempt to reserve their rights is not a response to the plaintiffs' motion and fails to respond to any of the well-founded arguments or authority cited by the plaintiff and that indicate that the plaintiff is entitled to prevent the defendants from challenging the validity of the copyrights at issue. Consequently, the plaintiffs' motion for summary judgment on the validity of the first five copyrighted designs could be granted for the failure to respond to any of the defendants' arguments.

The only argument that could be construed as an attempt to rebut the presumption of validity is an assertion, made without any explanation or analysis of the relevant copyrights, that the elements in the jewelry designs are unprotectable because they are common elements available in the public domain. This argument has no merit. The plaintiffs do not dispute that their copyrighted jewelry designs are composed of common elements from the public domain. However, the copyrights at issue do not protect the common elements in the designs; rather, the plaintiffs' copyrights are for the design combinations that result from combining those common elements. It is well established that "[c]opyright law may protect a combination of elements that are unoriginal in themselves." *Yurman Design*, 262 F.3d at 109.

In *Yurman*, the Court of Appeals specifically rejected the defendant's attempt to rebut the presumption of validity created by Yurman's registration certificates for cable jewelry. The defendant had argued that Yurman's copyrights were invalid because other jewelry existed that used certain gemstones and the cable design that is common to Yurman's copyrighted designs. *Id.* at 110. The Court of Appeals noted that the defendant's argument "misses the point" and that "the originality in Yurman's ... designs inheres in the ways

Yurman has recast and arranged those constituent elements." *Id.*

In this case, the defendants have made the same argument rejected in *Yurman*, but have not even attempted to identify which particular element in the plaintiffs' designs could not be copyrighted. In any event, the Court of Appeals has rejected the argument that the combination of elements commonly found in jewelry into a unique original design cannot be copyrighted. Consequently, the defendants have not rebutted the presumption of validity with respect to the plaintiffs' first five jewelry designs, and the plaintiffs' motion for summary judgment is granted. *See, e.g., Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F.Supp.2d 439, 442–43 (S.D.N.Y.1998); *United States Media Corp. v. Edde Entm't*, No. 94 Civ. 4849, 1996 WL 520901, at *4 (S.D.N.Y. Sept.12, 1996).

With respect to the remaining two copyrighted designs, because the certificates were issued more than five years after the jewelry designs were first published, there is no automatic statutory presumption of validity, but the Court has the discretion to accord them evidentiary weight as it sees fit. *See* 17 U.S.C. § 410(c); *Silberman v. Innovation Luggage, Inc.*, No. 01 Civ. 7109, 2003 WL 1787123, at *6 (S.D.N.Y. Apr.3, 2003). As explained earlier, with respect to the first five designs, the defendants have come forward with no argument or authority to rebut the presumption of validity. The defendants have also come forward with no argument or evidence with respect to the final two designs and to show why the Court should not consider the certificates for these two designs as prima facie evidence of valid copyrights. Indeed, having examined the record submitted in connection with the motion, the record reveals absolutely no evidence that suggests that the final two

certificates should not be considered prima facie evidence of valid copyrights and nothing that would raise any question as to the validity of the copyrights covered by the registration certificates. *See, e.g., United States Media Corp.,* 1996 WL 520901, at *3; *Cf. Tuff–N–Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.,* 99 F.Supp.2d 450, 457–58 (S.D.N.Y.2000)(rejecting subsequent challenge to copyright validity when Court had previously determined copyright was valid, based on the absence of evidence to challenge presumption created by copyright registration even though granted more than five years after first publication). Consequently, the final two certificates are to be accorded prima facie evidence of valid copyrights, and absent any reason or basis to rebut the presumption of validity, these two copyrights are valid, and the plaintiffs' motion for summary judgment regarding these two copyrights is granted.

Thus, the plaintiffs' motion for summary judgment on the issue of copyright validity is granted. The defendants' motion for summary judgment on the plaintiffs' copyright claim, arguing that the plaintiffs' designs are not protectable, is denied.

### B.

▮ The defendants have also moved for summary judgment on the grounds that the plaintiffs cannot satisfy the second element of a copyright claim. To prove the second element of a copyright claim, infringing copying, the plaintiffs must demonstrate both that the defendants have actually copied their works, and that such copying was illegal because a "substantial similarity" exists between the defendants jewelry designs and the protectable elements of the plaintiffs' designs. *See Knitwaves,* 71 F.3d at 1002; *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 123 (2d Cir.1994); *Odegard, Inc. v. Costikyan Classic Carpets, Inc.,* 963 F.Supp. 1328, 1336 (S.D.N.Y.1997). The defen-

dants have moved for summary judgment solely on the grounds that the plaintiffs, as a matter of law, cannot show substantial similarity.

The test for "substantial similarity" is the "ordinary observer test." *See Knitwaves,* 71 F.3d at 1002; *Fisher–Price,* 25 F.3d at 123. The ordinary observer test asks "whether the ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Folio,* 937 F.2d at 765 (internal quotations and citations omitted). *See also Knitwaves,* 71 F.3d at 1002. "[D]issimilarity between some aspects of the works will not automatically relieve the infringer of liability, for 'no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated.'" *Williams,* 84 F.3d at 588 (quoting *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir.1992)) "It is only when the similarities between the protected elements of [the plaintiffs' works] and the allegedly infringing work are of 'small import quantitatively or qualitatively' that the defendant will be found innocent of infringement." *Williams,* 84 F.3d at 588 (quoting *Rogers,* 960 F.2d at 308).

When a work contains both protectable and unprotectable elements, the inspection must be more discerning. *See Knitwaves,* 71 F.3d at 1002. The court "must attempt to extract the unprotectable elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves,* 71 F.3d at 1002. *See also Fisher–Price,* 25 F.3d at 123. This more discerning test does not change the degree of similarity required, only what elements of the works are being compared. *See Knitwaves,* 71 F.3d at 1002–03; *see also Fisher–Price,* 25 F.3d at 123 ("Where as here, we compare products that have both protectible and unprotecti-

ble elements, we must exclude comparison of the unprotectible elements form our application of the ordinary observer test"); *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 765–66 (2d Cir.1991) ("[S]ince only some of the design enjoys copyright protection, the observers's inspection must be more discerning."); *Odegard*, 963 F.Supp. at 1338.

The defendants, relying on *Folio Impressions*, have argued that the plaintiffs' designs are subject to the more discerning test. In *Folio Impressions*, the plaintiffs' copyrighted dress designs contained both protected and unprotectible elements, and the Court of Appeals found that the more discerning test would be applied because "only some of the design enjoys copyright protection." *Id.* In this case, the plaintiffs' jewelry designs are not composed of protected and unprotected elements; rather, although the jewelry designs, as explained above, are created from a combination of common elements, the designs are protected in their entirety because it is the combination of elements that is copyrighted. The combinations of the common elements have resulted in designs that are original and protected in their entirety. It makes no sense, as the defendants would appear to advocate, to look at the designs by excluding elements such as cable and gemstones and consider what is left. Consequently, the plaintiffs would only have to satisfy the ordinary observer test and show that the ordinary observer would tend to overlook the similarities between the plaintiffs' and defendants' jewelry designs.

In any event, regardless of which standard is applied to compare the two sets of jewelry designs, it could not be said that as a matter of law, that the defendants' jewelry designs are not substantially similar to those of the plaintiffs. In their papers filed in support of their motion, the defendants do not provide any analysis of the differences or similarities between the two sets of designs, but simply invite the Court to compare the designs and to conclude on its own that there is an absence of such similarity. The Court has done so and sees substantial similarity. The defendants, by not providing any factual support for their assertion that the designs are insufficiently similar, fail to make the necessary showing to prevail on a motion for summary judgment. In addition, the plaintiffs have provided various affidavits, declarations, and other documents that they contend show that there are significant and important similarities between the two sets of designs and that would satisfy the ordinary observer test. (*See, e.g.*, Exh. A attached to Decl. of Maxim H. Walbaum ("Walbaum Decl.") dated Feb. 14, 2003; Decl. of Joel Kopel dated Jan. 27, 2003 at ¶¶ 23–24 (detailing similarities between jewelry designs of plaintiffs and defendants); Decl. of Richard Caniglia dated Feb. 18, 2003 at ¶¶ 20–21 (same); Decl. of Carolyn Kelly dated Feb. 14, 2003 at ¶¶ 27–28; Evans Decl. at ¶¶ 20–21.) These submissions, absent any countervailing submissions from the defendants, together with the Court's own review of the designs and the allegedly infringing designs, establish that at a minimum there are genuine issue of material fact as to the similarity between the designs of the plaintiffs' jewelry and those produced by the defendants such that summary judgment could not be granted. The defendants' motion for summary judgment on the plaintiffs' copyright infringement claim is denied.

## IV.

The plaintiffs have also moved for summary judgment to strike the defendants' seventh affirmative defense of unclean hands. The defendants have asserted unclean hands as a defense to the

plaintiffs' claim for trade dress infringement. (Answer ¶ 12.)

The defendants have based their unclean hands defense on the allegations that the trade dress protection that the plaintiffs now seek is markedly different from the trade dress protection that the plaintiffs sought in prior lawsuits. In particular, the defendants base their unclean hands defense on the fact that the trade dress articulated in the Fourth Amended Complaint is merely an attempt by the plaintiffs to avoid the problems articulated by the Court of Appeals, when it rejected Yurman Design, Inc.'s attempt to claim that its trade dress could be discerned from its entire product line of jewelry. *See Yurman*, 262 F.3d at 114.

The defendants cannot maintain a defense of unclean hands where the basis of the defense is premised on the posture taken by the plaintiffs with respect to its trade dress in the course of litigation. "It is a well-settled principle of trademark law that 'the defense of unclean hands applies only with respect to the right in suit.'" *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 13 F.Supp.2d 430, 445 (S.D.N.Y.1998) (citing *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir.1983)). The fact that a party has brought a lawsuit in which the party seeks protection for a trademark or trade dress, allegedly in bad faith, cannot be the basis of a defense of unclean hands, because the "'[u]nclean hands must relate to the getting or using the alleged trademark rights.'" *Liz Claiborne*, 13 F.Supp.2d at 445 (quoting 5 J Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31:51 (4th ed.1998)). The plaintiffs' alleged bad faith in raising allegedly frivolous and unfounded trade dress infringement claims in this and other lawsuits arose only in the context of litigation and therefore, could not constitute unclean hands because any bad faith was unrelated to obtaining or using the trade dress rights. *See, e.g., Claiborne*, 13 F.Supp.2d at 445; *R & R Rec. Prods., Inc. v. Joan Cook Incorp.*, No. 91 Civ. 2589, 1992 WL 88171, at *6 (S.D.N.Y. Apr. 14, 1992).

In any event, if the defendants could raise a defense of unclean hands, summary judgment would be appropriate because the defendants have not come forward with any evidence of unclean hands. In response to interrogatories requesting the basis for the defense of unclean hands, the defendants indicated that persons having knowledge of unclean hands were the plaintiffs and the evidence of unclean hands were documents held by the plaintiffs. (*See* Answers & Objections of Defendant Alisa Designs to Pls.' Third Set of Interrogatories attached as exh. C. to Aff. of Lori D. Greendorfer sworn to Dec. 13, 2002 at 6.) At the close of discovery, and in response to the plaintiffs' motion, the defendants have still not come forward with any evidence of bad faith or misconduct that would support a defense of unclean hands. The defendants have merely re-alleged their prior allegations of bad faith, but mere allegations, absent any evidence of unclean hands, are insufficient to create the genuine issue of fact necessary to survive the plaintiffs' motion. *See, e.g., UMG Recordings, Inc. v. MP3.com*, 92 F.Supp.2d 349, 353 (S.D.N.Y.2000); *Coleman v. ESPN, Inc.*, 764 F.Supp. 290, 296 (S.D.N.Y.1991). To the extent that the defendants claim that the plaintiffs are guilty of "unclean hands" because they have modified their definition of trade dress in response to the decision by the Court of Appeals in *Yurman*, the argument is frivolous. The plaintiff had the right to follow the law as defined by the Court of Appeals and the plaintiffs' position with respect to trade dress is sufficiently substantial that it has withstood the defendants' motion for summary judgment.

Consequently, the plaintiffs motion for summary judgment striking the seventh affirmative defense is granted.

## CONCLUSION

The remaining arguments are either moot or without merit. For the reasons explained above, the defendants' motion for summary judgment on the plaintiffs' claims of trade dress and copyright infringement are denied. The plaintiffs' motion for partial summary judgment on the validity of certain copyrighted designs is granted. The plaintiffs' motion to strike the defendants' defense of unclean hands is also granted. The parties are directed to submit a joint pre-trial order together with all pre-trial filings, including any motions in limine, **four weeks** from the date of this decision.

**SO ORDERED.**