**HERBERT ROSENTHAL JEWELRY CORPORATION, Plaintiff,**

v.

**HONORA JEWELRY CO., INC., et al., Defendants.**

No. 73 Civ. 4865 CLB.

United States District Court, S. D. New York.

May 22, 1974.

**486**

Charles Sonnenreich, New York City, for plaintiff.

Pollack & Singer, by Daniel A. Pollack and Neil D. Thompson, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By its complaint filed November 13, 1973, plaintiff, a jewelry manufacturer (hereinafter "Rosenthal"), sues for damages, preliminary and permanent injunctive relief, and an accounting, arising out of claimed copyright infringement by defendants (hereinafter collectively "Honora") of its copyright design for a gold, jeweled turtle pin. Plaintiff also seeks destruction of the infringing pins, counsel fees, costs and other relief.

We have subject matter jurisdiction under 28 U.S.C. § 1338. All parties are present in this District. Defendants' answer denies copying, and pleads affirmatively that plaintiff failed to comply with the notice requirements (17 U.S.C. § 19), never acquired, or alternatively, has abandoned a valid copyright.

By notice of motion dated April 2, 1974, argued, and fully submitted on April 30, 1974, plaintiff seeks summary judgment in its favor, and a preliminary injunction. Both parties have been deposed.

Plaintiff and defendant Honora each make a turtle pin. A sample of each pin was received at the hearing on this motion. Prior to April 13, 1967, plaintiff had designed for it, by one Lindemann, a jeweled turtle pin made of 14 kt. gold, the back of which was adorned with a cluster of precious gems, including diamonds, rubies, emeralds and sapphires, and combinations thereof. A copyright registration was filed and issued to plaintiff on December 4, 1967. We assume for the purposes of this motion the validity of the copyright, and that plaintiff duly marked its turtle pins, and "has sold [in interstate commerce] hundreds of its turtle pins ranging from $200 to $1,000 each, depending upon the gems used" (Affidavit of Herbert Rosenthal, sworn to April 1, 1974).

In 1968, the individual defendants herein, Grossbardt and Schechter, then co-partners doing business under the trade name of Honora Jewelry Co., copied plaintiff's turtle pin exactly. They did so with knowledge. A preliminary injunction against such infringement, granted by Judge Metzner of this Court (68 Civ. 4154) on August 1, 1969, was affirmed on appeal, 2 Cir., 428 F.2d 551, decided June 17, 1970. Thereafter, a fi-

nal decree enjoining further infringement of the turtle copyright was entered on consent on June 14, 1971. While that litigation was still pending, defendants there, now doing business under corporate form, began making their present turtle, and began to sell it to the public.

Plaintiff here asserts that (Rosenthal Affidavit of April 1, 1974):

"A solid gold figure of a turtle with only slight differences in its body is used by defendants. The overall appearance of defendants' pin however, so closely resembles plaintiff's as to give the same impression to any average purchaser. Furthermore, defendant Grossbardt on his deposition admitted using the same stones as plaintiff as well as the same combination of stones. It is apparent to deponent as it should be to this Court that defendants sought to closely simulate plaintiff's pin in order to capitalize on its popularity and the extensive advertising by plaintiff. Defendants further admitted by stipulation dated March 15, 1974 herein, that its selling prices were far below plaintiff's selling prices, leaving your deponent to conclude that defendants used inferior gems and gold in order to undersell plaintiff."

A stipulation of facts dated March 15, 1974, and filed herein, shows that defendant sold its pins for $97.50 and $95.-00 since January, 1971, and also sold a smaller pin for prices between $80.00 and $102.50. Honora also sold its turtle with different arrangements of stones, such as all diamonds, all emeralds or all sapphires, variously priced, as more particularly set forth in the stipulation.

Plaintiff disclaims any direct evidence of copying. It infers copying solely from a comparison of the two pins, and from defendant's prior conduct in 1968. Defendant has come forward with its evidence, as required by Rule 56, F.R.Civ. P. It showed by documents that on November 30, 1970 it solicited a Hong Kong jewelry designer or manufacturer in writing as follows:

"Regarding the six bug pins and the two different size owl pins we ordered, I would like to know if you can also make an inexpensive turtle pin in two sizes, using the same motiff (sic). If you can, please make us the two samples as soon as possible."

In compliance with this letter, the Hong Kong resource on January 5, 1971 invoiced models of the turtle in two sizes. A copy of the invoice is attached to the affidavit of defendant Grossbardt, sworn to April 15, 1974. It was conceded at the hearing of this motion that the turtle which had been knocked off in 1968 was an identical or precise "chinese" copy of plaintiff's pin. This turtle is not.

The parties agree that the test to be applied in determining infringement is "whether an average lay observer would find a substantial similarity in the designs." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., D.C., 173 F.Supp. 292, aff'd, 274 F.2d 487 (2d Cir. 1960). Plaintiff's view of the controversy is best found at page 5 of its brief, where it states:

"[a]lthough different details may certainly be found when the pins are placed side by side, these differences are intended merely to furnish a basis for argument in the courts and have no real impact on the sale of the pin to retail purchasers. To a purchaser of expensive jewelry the designs are the same. The essence of the copyrighted design lies in the arrangement of the gems in an oval shape on the back of a gold turtle. These features are substantially identical in the two designs before the Court. In addition the defendants have utilized the same gems and combination of gems as did plaintiff."

We do not agree. How else could gems be placed on the back of a gold turtle, other than in an oval shape? That is the natural shape of the shell of any turtle. We do agree that the essential issue in this case can be decided by visual examination of the two competing turtles.

Plaintiff's reply memorandum (p. 4) concedes, relying on Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., D.C., 365 F.Supp. 1199, rev'd, 490 F.2d 1092 (2d Cir. 1974) that "this issue of infringement can be determined by this Court, without the need for a trial, by a mere visable (sic) comparison of the two pins applying the test established in this Circuit."

▇ Plaintiff's President, Herbert Rosenthal, describes his copyrighted pin, as weighing one carat, having ten stones on top averaging ten points apiece, made of nugget gold around the perimeter or fringes, and with four feet and a protruding neck. He testified that defendant's pin, which he claims infringes, was lighter, that it was not made of nugget gold, but a reasonable imitation thereof, that the turtle's tail on Rosenthal's pin was straight, while the tail on the turtle comprising defendant's pin was somewhat curved. Plaintiff's has jewelry stones in the eyes, and the defendant's pin does not. Plaintiff's pin has flat, or paddle type feet, while defendant's pin indicates toe differentiations. Plaintiff's pin has a gold base holding it together, and defendant's pin has no such base. Plaintiff's pin has a matted finish on the head of the turtle, while defendant's turtle head has a lined finish. but Mr. Rosenthal asserted that this difference in the finish was not observable to the naked eye.[1]

Plaintiff's turtle head comes out straight from the body, while the head on defendant's pin protrudes from the shell of the turtle at an angle from the body. There are twenty-seven little nubs or sections in the shell of plaintiff's, while defendant's has only ten rounded sections with straight lines. The body of plaintiff's pin consists of two pieces, with the top soldered onto the bottom frame, while defendant's appears to have been manufactured in a single piece. Defendant's pin is half the thickness or depth of plaintiff's pin (8 millimeters vs. 4 millimeters). Plaintiff's pin has a line for the mouth of the turtle, and defendant's pin has no mouth on the turtle. These differences or comparisons are all conceded under oath by Mr. Rosenthal at his deposition, taken February 27, 1974, and read in opposition to the motion.

The reptile depicted is not fanciful. He exists in nature. A member of the order Chelonia, he is found in approximately 225 different species, some of which are marine (and properly called turtles). Others inhabit fresh water (terrapin) or are strictly terrestrial (tortoises). Certain distinctive features are possessed by Chelonia in nature. These include the upper carapace or top shell and the lower plastron or bottom shell. Ordinarily at least ten, but not more than twelve, plates are found on the top of the turtle's carapace and fused to the vertebrae, surrounded by a lateral row of eight plates on each side, fused to the ribs, and about twenty-three small plates bordering the edge of the carapace. Neither pin conforms precisely to this structure of carapace, but each has ten stones, precisely equal to the number of vertebral segments found in nature. The plastrons are not disclosed to the observer, and not part of either pin's design. A difference exists as to the carapace in that plaintiff's has a higher or deeper dome than does defendant's turtle. The terrestrial branches of the order Chelonia are high-domed, more so than the marine or fresh water reptiles, and their carapace is large enough for the head and limbs to be fully withdrawn. In aquatic species the shell dome is depressed and offers less protection. The digits on the feet are distinct and webbed with respect to fresh water turtles; marine turtles have the digits of their feet all bound together, and often lack claws. Their feet are more nearly similar to paddles. Marine turtles have adapted their feet through evolution, for swimming, rather than

---

1. In this he is only partly correct. To the naked eye, Ex. A has a higher quality finish to the turtle's head, more pleasing, but not superficially different as to its nature or mode.

walking, which is secondary and limited to sandy beaches. Here a distinct difference appears between defendant's turtle, which is generally a representation of a fresh water turtle, as compared to plaintiff's, whose turtle is more nearly terrestrial in body conformation, but has marine feet.

Of course, both turtles represent imaginative depictions, and neither one conforms strictly to any species known to nature. Defendant's turtle has well defined separations in the small or outer plates of the carapace, not found on plaintiff's turtle, and a bigger head, further extended. The eyes of defendant's turtle, unlike those of plaintiff's, protrude from the top of the skull.

The differences observed in the turtles by the Court, taken together with the differences conceded by Mr. Herbert Rosenthal on his deposition, compel a finding of no infringement, and also compel the inference of originality, rather than copying.

Plaintiff's view of the case is expressed at his deposition (p. 19, et seq.):

"Q Can you tell us in what respects the pin that the defendants made simulated in design the design of your turtle pin?

A To begin with, the general design simulates my design.

Q In what respect?

A Well, the whole contour, the whole concept, the whole idea, the whole design is similar in my estimation.

Q Well, surely you do not claim that a turtle is something that is copyrighted to you, that the idea of a turtle, jeweled turtle pin is copyrighted to you, do you?

A Well, that particular one with the ten stones on top is definitely my type of design.

Q Well, is that what makes it special to you, the ten stones on top?

A To me, to my thinking, it is special to me.

Q The ten stones?

A Yes.

Q Is there anything else that makes it special to you?

A And the whole concept of the turtle with ten stones.

Q In other words, someone could make a turtle without the ten stones and he wouldn't be infringing your copyright, is that correct?

A Right.

Q Is there any other element of it besides the ten stones which you claim is unique to you?

A Well, that is what I am basing my complaint on.

Q The ten stones?

A Ten stones and the general idea to simulate my type of turtle.

Q Well, can you explain or specify what in addition to the ten stones is unique to your pin?

A Merely by turning the head one way and turning the tail another way does not eliminate the general concept of the turtle.

Q Well, you don't claim that the general concept of the turtle is something that you have a right to copyright, do you?

A I think so.

* * * * * *

Q Is there any other respect other than the ten stones in which—

A I have answered the question. I told you, the general concept, the general design. You went into specifics. That is immaterial in my book.

Q Could you tell me what you mean by the general concept or general design?

A Pardon me. I didn't hear you.

Q Can you tell me what you mean by the general concept or general design?

A There is a turtle there with a top on it with ten stones and all the arrangements that surround it

**490**

make up the general concept of the turtle.

Q   Is that what your copyright is all about?

A   That's right.  You can see that nobody else has made up the turtle.

Q   Would it be your position that any turtle pin that has ten stones in it would infringe your copyright?

A   Let me go one step further

Q   Please answer that question first and then go one step further?

A   You don't want extra information?  Yes."

■■   The purpose of the copyright laws are to protect original designs from copying, not to convey to the proprietor any right to exclude others from the market place for jeweled turtle pins. Particularly fatuous is plaintiff's claim that the presence of gems in the number of ten, on the back of the turtle is original on its part and protected, or that defendant's turtle also has ten gems is evidence of copying.  As we point out, *supra,* p. 488, a turtle has at least ten vertebrae segments on the top of his carapace.  In this regard each designer was merely representing nature.

■   Plaintiff cannot appropriate the concept or idea of a jeweled turtle pin, and exclude all others from the jewelry market.  American consumers are entitled to preserve their age old right to have the benefit of the fact that there is nothing anyone can design or manufacture which someone else cannot make worse and sell for less.

■■   It is irrelevant to the issues here if defendants are, as charged in the motion papers, bad people, who knocked off plaintiff's copyrighted turtle in 1968.  For this misconduct they were duly enjoined by Judge Metzner of this Court, and the preliminary injunction affirmed by our Court of Appeals.  This was followed by a consent judgment. Perhaps it was sharp dealing to have signed the consent order, presumably based on some negotiation or discussion with plaintiff, at the same time withholding the fact that the defendant corporation had been formed, and was manufacturing a jeweled turtle pin even while the consent judgment was being discussed.  Such disclosure might have prevented this lawsuit, but it is not a factor which we can consider in determining whether or not the turtle pin currently being manufactured by this defendant infringes plaintiff's copyright.  Also, if, as charged, the defendants or some of them submitted a spurious document to Judge Palmieri of this Court in connection with litigation between the same parties concerning the jeweled bee pin (67 Civ. 4674), (Affidavit of Charles Sonnenreich, sworn to April 19, 1974), that contention is as irrelevant as it is disparaging.

■   The question of whether plaintiff's turtle has been adequately marked with the copyright notice was adjudicated in the prior litigation, and is a matter which, barring circumstances arising subsequent to Judge Metzner's order, these parties should be precluded from relitigating by the doctrine of collateral estoppel.

There are no disputed issues of material fact.  Plaintiff shows no infringement, and has brought forth insufficient evidence in support of this motion to justify a trial of the issue of infringement.

■   Defendants did not move for summary judgment in their favor, probably because they were dissuaded by the Court's expressions made at a pre-trial conference, at which the plaintiff was urged to accept an immediate trial on the merits in lieu of making this motion. We think adequate authority exists in this Circuit for us to follow the wholesome practice under New York CPLR § 3212(b), and in disposing of plaintiff's motion for summary judgment, although not so requested, to grant summary judgment to defendants dismissing the complaint.  See First National Bank in Yonkers v. Maryland Casualty Co., 290

F.2d 246, 251 (2d Cir. 1961), cert. denied, 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed. 2d 338.

Plaintiff's motions for summary judgment and for a preliminary injunction against further sale of defendant's turtle pin are denied. Summary Judgment is granted to defendants, and the complaint is dismissed.

The Clerk of the Court shall enter judgment pursuant to Rule 58(1), F.R. Civ.P., that all relief shall be denied.

So ordered.