**MICHAEL GRECCO PHOTOGRAPHY, INC., Plaintiff,**

v.

**EVERETT COLLECTION, INC., Defendant.**

**No. 07–CV–8171 (CM).**

United States District Court, S.D. New York.

Dec. 9, 2008.

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PARTIAL SUMMARY JUDGMENT TO PLAINTIFF

McMAHON, District Judge.

On September 18, 2007. plaintiff commenced this action for copyright infringement and violation of Section 43(a) of the Lanham Act. Defendant now moves for summary judgment on all of plaintiff's claims. For the reasons set forth below, defendant's motion is granted to the extent of dismissing the claims under the Lanham Act, and is otherwise denied.

Although plaintiff did not cross move for summary judgment, as to one of the copyrighted images there is no disputed issue of material fact and plaintiff, rather than defendant, is entitled to judgment as a matter of law. Accordingly, I grant summary judgment on the issue of liability only to plaintiff in connection with defendant's infringement of the so-called "Frankenstein" images, pursuant to Fed. R.Civ.P. 56(d)(2). In addition, plaintiff is entitled to summary judgment on certain discrete issues, notably his ownership of the copyright in the images at issue and the non-*de minimis* nature of Everett's copying. Fed.R.Civ.P. 56(d)(1). These issues need not be tried.

## I. Background

The following facts are undisputed. Although plaintiff initially failed to comply with Rule 56.1 of the Local Rules for the Southern District of New York ("Rule 56.1"), on November 12, 2008, I ordered plaintiff to submit a Rule 56.1 Counterstatement. Plaintiff submitted the statement on November 14, 2008.

### A. The Parties

Plaintiff Michael Grecco Photography, Inc. ("Grecco") is the corporate entity of Michael Grecco, a professional photographer. (Compl. ¶¶ 1, 8; Answer ¶ 1.) As part of its business, Grecco is hired by various Hollywood studios to take publicity photographs of celebrities, and Grecco then licenses the photographs to the studios. (Compl. ¶¶ 17, 25; Butterfield Decl., Ex. 5.)

Defendant Everett Collection, Inc. ("Everett") is a corporation that maintains a website archive at www.everettcollection. com, which contains publicity materials that relate to the entertainment industry, such as publicity stills from popular 1990s

television shows. (Def. R. 56.1 Stmt. ¶¶ 3–5.)

## B. The Complaint

The complaint contains five causes of action: (1) intentional and willful copyright infringement; (2) negligent copyright infringement; (3) intentional and willful violation of § 43(a) of the Lanham Act; (4) negligent violation of § 43(a) of the Lanham Act; and (5) a claim for an injunction, which is a remedy, not a separate cause of action.

### (1) Alleged Copyright Infringement

Grecco alleges that it created and owns copyright in at least twenty-two images (the "Images") of celebrities who appeared in 1990s television shows, including images of Luke Perry from "Beverly Hills, 90210," Lucy Lawless from "Xena: Warrior Princess," Christina Applegate from "Married ... with Children," David Duchovny and Gillian Anderson from "The X–Files," as well as actors from "The Sentinel" and "Frankenstein." (Compl.¶¶ 21, 23, Ex. A.) Grecco alleges that Everett infringed its copyrights in these Images by posting them on Everett's website, offering them for sale, and/or licensing them, without Grecco's consent. (*Id.* ¶¶ 20, 52, 59.)

Everett admits that it distributed two of plaintiff s twenty-two Images to third parties for a fee. (Def. R. 56.1 Stmt. ¶ 17.) Everett states that it made the Luke Perry Image available to "Stuff Magazine" in May 2006, charging a total access fee of $200.00. (*Id.* ¶ 18.) Everett states that it also made one of the "Xena" Images available to "In Quest Magazine" in February 2005, charging a total access fee of $100.00. (*Id.* ¶ 19.)

The terms and conditions of using an image purchased from the Everett Collection ("EC") state, "EC only provides access to the images in its archive. Unless otherwise specified in writing, EC is not the copyright owner of any image provided." (Harvey Decl., Ex. A ¶ 4.) Everett's website also informs users that, "Everett is not the copyright holder of the images." (Pl. Resp. R. 56.1 Stmt. ¶ 21.)

### a. Copyright Registration of the Images

Grecco attached four copyright registrations to its complaint, as well as three applications for copyright registration. The Court's review of the U.S. Copyright Office website revealed that these applications have been processed, and certificates of registration issued. However, Grecco did not attach copies of its copyrighted works to its complaint, so I could not tell what the allegedly copyrighted materials looked like. In addition, the copies of the allegedly infringing materials were indecipherable.

On November 12, 2008, I ordered Grecco to produce legible copies of the materials it deposited to the copyright office, as well as legible copies of the allegedly infringing materials. Grecco complied with the order on November 14, 2008.

When responding to the Court's Order, Grecco produced the following copyright registrations, which correspond to the following number of allegedly infringed images:

Grecco Photography—Applegate 4, Reg. No. VA 1-418-418, Dec. 6, 2008, First Publication Apr. 15, 1992 (1 image);

Grecco Photography—Xena 2, Reg. No. VA 1-418-420, Dec 6, 2008, First Publication June 7, 1997 (5 images);

Grecco Photography—Sentinel, Reg. No. VA 1-220-302, Sept. 22, 2003, First Publication Feb. 5, 1996 (1 image);

Grecco Photography—X-Files/Fox 4, Reg. No. VA 1-418-417, Dec. 6, 2006, First Publication Oct. 25, 1993 (3 images);

Grecco Photography—Luke Perry, Reg. No. VA 1-220-303, Sept. 22, 2003, First Publication Sept. 26, 1990 (1 image);

Grecco Photography Xena, Reg. No. VA 1-298-835, Dec. 3, 2004, First Publication June 7, 1997 (2 images); and

Grecco Photography 6/4/04 to 6/30/04, Reg. No. VAu632-558, July 2, 2004, Work Completed 2004 (9 "Frankenstein" images).

Grecco also produced a certificate of registration fro a twenty-third work, entitled "Grecco Photography—Christian McBride," and state that the corresponding image "is the now 23[rd] image which has been infringed by Defendant." Since Grecco's complaint state that Everett infringed "at least twenty two" of Grecco's images, there is no need for Grecco to amend its complaint in order to litigate its claim to the Christian McBride image.[1] The registration information for this twenty-third image, which was taken for Polygram Records for Christian McBride's CD packaging and publicity, is as follows:

Grecco Photography—Christian McBride, Reg. No. VA 1–418–416, Dec. 6, 2006, First Publication Feb. 15, 1996 (1 image).

Most of the works were registered with the Copyright Office more than five years after copyright attached by virtue of their being fixed in a tangible medium.

### b. Licensing of Rights to the Images

Grecco licensed his photographs to various end users, including the Hollywood studios that produced the programs featuring the actors in the Images, and the networks on which the programs were broadcast. (See Def. R. 56.1 Stmt. ¶ 14.) Every licensing arrangement was accompanied by a document consisting of two parts: an assignment invoice and a pre-

printed document entitled "Terms and Conditions." There are two different versions of the "Terms and Conditions." Prior to 2004, the "Terms and Conditions" ("T & C 1") provided:

**Copyright protection/credit line.** Client acknowledges that Michael Grecco Photography owns the copyright to the photographs and agrees to take all necessary protections to insure protection of such copyright. . . .

**Scope of license.** Rights granted are for **one** use only (excluding buy outs). Rights granted under this license may not be assigned or transferred without written permission. Materials may not be reproduced, copied, projected, cannibalized or otherwise used without written consent. . . .

(Butterfield Deck, Ex. 5.) In 2004, a new version of the "Terms and Conditions" ("T & C 2") provided:

**Rights Licensed:** . . . . Unless otherwise specifically stated on the front of this Agreement, all licenses are non-exclusive, [and] the duration of any license is one year from the date of Licensor's invoice. . . . Licensor reserves all rights in the Image(s) of every kind and nature, including, without limitation, electronic publishing and use rights. . . . Client shall not assign any of its rights or obligations under this Agreement. . . .

**Electronic Rights:** No electronic publishing or use of any kind is licensed unless specifically stated on the front of this Agreement. The use rights reserved by Licensor include, without limitation, all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and yet unknown. . . .

---

**1.** However, if Grecco moves to amend its complaint, the Court will grant leave to amend under the "freely amend" standard of Fed.R.Civ.P. 15(a)(2).

(*Id.*) Taken together, the invoices and the corresponding "Terms and Conditions" in force on the date of the invoice constitute the licensing agreements between Grecco and the studios/networks.

The following is a summary of the licensing agreements relevant to the twenty-three images at issue in this lawsuit:

**Fox Broadcasting Company ("Fox")**—One Luke Perry image (January 12, 1990).

**Invoice states:** "For Fox Television . . . [a]lso shot was Luke Perry of The Class of Beverly Hills' for publicity use."

**Invoice accompanied by:** T & C 1.

**Fox**—One Christina Applegate image (January 15, 1993).

**Invoice states:** "All rights for publicity and advertising for Fox Broadcasting only. Michael Grecco Photography, Inc. retains the copyright to all photographs and the right to use any photographs for personal portfolio and promotional use."

**Invoice accompanied by:** T & C 1.

**Fox**—Three "X–Files" images (June 25, 1993).

**Invoice states:** "F.B.C. all rights for publicity and advertising only. Michael Grecco Photography, Inc. retains the copyright to all photographs and the right to use any photographs for personal portfolio and promotional use."

**Invoice accompanied by:** T & C 1.

**MCA Television Group**—Seven "Xena" images (June 1, 1997).

**Invoice states:** "Unlimited usage rights are granted to the client. Michael Grecco retains the copyright to all photographs. Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use."

**Invoice accompanied by:** T & C 1.

**United Paramount Network**—One "Sentinel" image (January 8, 1996).

**Invoice states:** "All rights of usage are granted to the client. Michael Grecco retains the copyright to all photographs.

Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use."

**Invoice accompanied by:** T & C 1.

**Polygram Records**—One Christian McBride image (January 15, 1996).

**Invoice states:** "All rights of usage are granted to the client. Michael Grecco retains the copyright to all photographs. Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use."

**Invoice accompanied by:** T & C 1.

**USA Networks**—Nine "Frankenstein" images (June 23, 2004, June 30, 2004, and July 14, 2004).

**Invoice states:** "Exclusive unlimited usage rights are granted to the client only. These rights may not be transferred to a third party. Licensor retains the copyright to all Images and the right to use any Images or derivative work for portfolio and promotional use."

**Invoice accompanied by:** T & C 2.

(*Id.*)

**(1) Alleged Violation of the Lanham Act**

Grecco alleges that, without its consent, Everett overlaid the "Everett Collection" logo on the Images, which "represents and leads potential purchasers to believe that defendant has rights to (at least) license the image and/or maintains some business and/or agency relationship" with Grecco. (Compl.¶ 22.) According to Grecco, Everett held itself out as Grecco's agent, and this "misrepresentation and use of Mr. Grecco's name constitutes unfair competition and is a violation of Section 43a of the Lanham Act." (*Id.* ¶¶ 68, 72, 81.)

**II. Discussion**

Summary judgment is appropriate if the evidence offered shows that there is "no genuine issue as to any material fact" and

the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view the record in the light most favorable to the party opposing the motion and draw all reasonable inferences in its favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

In considering a motion for summary judgment, "if [the Court's] analysis reveals that there are no genuine issues of material fact, but that the law is on the side of the non-moving party, [the Court] may grant summary judgment in favor of the non-moving party even though it has made no formal cross-motion." *Orix Credit Alliance v. Horten*, 965 F.Supp. 481, 484 (S.D.N.Y.1997) (citation omitted).

Additionally, the court "should" grant summary judgment as to any discrete issue that is not in dispute, or on the issue of liability when all issues that would establish liability are undisputed. Fed.R.Civ.P. 56(d).

Defendant has moved for summary judgment, arguing that the copyright infringement claims should be dismissed because Grecco cannot prove copyright ownership, and that the Lanham Act claims should be dismissed because the Lanham Act cannot be used to litigate claims that are in essence copyright infringement claims. I conclude that Grecco has established a prima facie case of copyright ownership, and is entitled to summary judgment on that issue. Grecco is also entitled to summary judgment on the issue of whether Everett's admitted copying of his images was de minimis. However, with the exception of the so-called Frankenstein licenses, there are disputed issues of material fact concerning the exclusivity, or lack

of exclusivity, of the licenses that Grecco entered into with the studios that commissioned him to take the photographs. There is no dispute that the Frankenstein licenses are exclusive to the licensee, Universal Studios; however, there is also no dispute that the exclusive licenses expired in 1995, so Grecco can enforce his rights in those images. Finally, I agree with Everett that the Lanham Act claims are merely disguised copyright infringement claims, and grant summary judgment in favor of defendant dismissing Grecco's two Lanham Act claims.

## A. Copyright Infringement Claims

### 1. The Certificates of Copyright Registration Are Prima Facie Evidence of Grecco's Ownership of Valid Copyrights in the Images

■ In order to establish a prima facie case of copyright infringement, plaintiff must show (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). It is a prerequisite to bringing suit for infringement of the copyright in any United States work that the work be registered with the Copyright Office. 17 U.S.C. § 411(a).

■ Although Grecco submitted copyright registrations for all the Images, Everett argues that the registrations should be accorded little weight because they were obtained more than five years after the Images were first published.

The Copyright Act provides that a "certificate of a [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). However, under § 410(c) of the Copyright Act, if the certificate of copyright registration is not obtained within five years of the first pub-

lication of the work, the work is not entitled to the statutory presumption of validity—the "evidentiary weight to be accorded the certificate ... shall be within the discretion of the court." 17 U.S.C. § 410(c). Seven of the eight certificates of registration provided by Grecco (all but the registration for the work entitled "Grecco Photography 6/4/04 to 6/30/04") are for works that were published more than five years before the works were registered with the Copyright Office.

Nonetheless, Everett has not offered any evidence tending to show that the certificates of registration provided by Grecco are invalid, or that Grecco does not in fact own the copyrights in the Images covered by those registrations. And there is considerable evidence (including the various license agreements, which are discussed below) demonstrating that plaintiff does indeed own the copyright in these photographs. Therefore, the Court, in its discretion, will consider the certificates as prima facie evidence of valid copyrights in the Images. *See Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F.Supp.2d 506, 515–516 (S.D.N.Y.2003) (certificates of registration issued more than five years after works were first published are prima facie evidence of valid copyrights, because defendants did not come forward with any evidence that "would raise any question as to the validity of the copyrights covered by the registration certificates"); *Telerate Sys., Inc. v. Caro*, 689 F.Supp. 221, 227 n. 7 (S.D.N.Y. 1988) ("Even if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c).").

Furthermore, "absent any reason or basis to rebut the presumption of validity," Grecco's copyrights in the Images will be deemed valid. *Yurman*, 275 F.Supp.2d at 516. Everett does not offer evidence that undermines the presumption of validity. Therefore, there is no disputed issue of material fact, and Grecco, not defendant, is entitled to summary judgment on the issue of ownership of the copyrights in the Images.

**2. The Issue of the Exclusivity of Grecco's Licenses Must Go to Trial For All Images Except the "Frankenstein" Images**

■ Everett next argues that Grecco does not have standing to sue to enforce its copyrights because he granted third parties exclusive rights in the images. Here—with one notable exception—he may be on firmer ground. However, because there are disputed issues of material fact defendant is not entitled to summary judgment on this issue.

"The Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in [six] qualified ways" under 17 U.S.C. § 106. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432–33, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). The exclusive rights that apply to the holder of copyright in a photograph include the right:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; [and] ...
>
> (5) in the case of ... pictorial, graphic, or sculptural works, ... to display the copyrighted work publicly.

17 U.S.C. § 106.[2]

■ A copyright holder has the ability to grant licenses to third parties, allow-

**2.** Section 106(4) relates to the right of public performance of audiovisual works. Section

ing the licensee to use the copyrighted work in one of the ways specified in § 106. There are two general categories of licenses: non-exclusive and exclusive. *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir.2007). If the license is non-exclusive, the copyright holder may continue to use the copyrighted work in the manner specified in the license agreement, and may grant other licenses to use the work in that manner. *Id.* However, if the license is exclusive, the licensee has the exclusive right—superior even to the copyright owner's right—to use the copyrighted material in the manner specified in the license agreement. *Id.* That is, an exclusive license conveys a particular § 106 exclusive right to the licensee, and the exclusive licensee "is the only one who may exercise that right." *Id.* at 99 n. 10.

Grecco licensed the Images to various Hollywood studios and networks. Everett argues that these licenses were exclusive, and that Grecco assigned all of its exclusive rights in the Images to the studios, except the right to "personal portfolio and promotional use." (Def. Mem. at 11.) Therefore, Everett argues that Grecco no longer possesses any rights in the Images that are enforceable against Everett. According to Everett, this conclusion is consistent with industry practice for publicity stills, whereby studios hire photographers to take publicity photographs, and the photographers "grant broad rights to the studios to use the photographs in any matter they see fit for publicity and promotional purposes." (Harvey Decl. ¶ 5; Def. Mem. at 11.)

Grecco, on the other hand, argues that its licenses to the studios were non-exclusive, as evidenced by the fact that Grecco "licensed several of the images to third parties with the active consent or indiffer-

ence of the studios." (Grecco Decl. ¶ 7; Pl. Mem. at 7.)

■ On a summary judgment motion, the Court must construe all evidence in the light most favorable to the nonmoving party—in this case, Grecco. *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir.2008). In a case involving contractual language, summary judgment may be granted only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning. *Id.* Contractual language is ambiguous if "a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Id.* (citation omitted). If the contract language is unambiguous, parol evidence is not admissible to vary it; therefore, if Grecco is correct that the contracts unambiguously confer something other than an exclusive license, Harvey's declaration about industry practice, on which Everett relies, would fail to raise any genuine issue of fact.

Grecco's licensing agreements with Fox, MCA, United Paramount Network, and Polygram Records are governed by T & C 1, which states that Grecco "owns the copyright to the photographs" and that "Rights granted are for one use only." These licenses appear on their face to be both unambiguous and non-exclusive. Of course, T & C 1 must be read together with the invoices sent to the studios. But the invoice to MCA grants it "Unlimited usage rights," and the invoices to United Paramount Network and Polygram Records grant them "All rights of usage." Neither "unlimited" nor "all" is a synonym for "exclusive." Thus, it appears that MCA, United Paramount Network, and

106(6) relates to the right of public performance of sound recordings by means of digital

audio transmissions. These sections do not apply to photographs.

Polygram Records were all granted licenses to make whatever use they wished of the Images, but not exclusive licenses—especially in light of the accompanying "Terms and Conditions."

However, what at first blush appears to be unambiguous is rendered ambiguous by additional language in these invoices, which states, "Michael Grecco retains the copyright to all photographs. Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use." This verbiage, which appears on Grecco's own invoice and so must be construed against him (the drafter), suggests that, Grecco may well have intended to confer an exclusive license, giving the studios all his § 106 rights except in connection with promoting himself as a photographer. As a result, this issue must go to trial, and summary judgment is denied as to the "Xena," "Sentinel," and Christian McBride Images.

The invoice to Fox for the Luke Perry Image merely states that the Image was "shot ... for publicity use." It makes no use of the word "exclusive," or of any other word that might be considered as a synonym for "exclusive." However, this invoice is rendered ambiguous by Grecco's affirmative assertion that he has re-licensed the Image "with the active consent ... of the studios," (Grecco Decl. ¶¶ 7–8, Ex. A), and his argument that the studios were "fully aware of Mr. Grecco's licensing of the subject images and ... *consented to such licenses*" (Pl. Mem. at 7 (emphasis in original)). If Grecco asked Fox for consent to relicense the Perry image (one of the two that Everett admittedly licensed), it implies that he granted Fox an exclusive license. Therefore, summary judgment is denied as to the Luke Perry Image.

The invoice to Fox for the "X–Files" Images presents a slightly different issue. It states, "F.B.C. [Fox Broadcasting Company] all rights for publicity and advertis-

ing only." The Court, applying the "rule of the last antecedent," reads the word "only" to modify the phrase immediately preceding it. *See Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003); *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 146–47 (2d Cir.1999); *McPheeters v. McGinn, Smith & Co.,* 953 F.2d 771, 774 (2d Cir.1992). Thus, "only" modifies "publicity and advertising," not "F.B.C.," and the license gives Fox the right to use the Images for limited purposes—publicity and advertising only. It does not appear to give Fox an exclusive right to use the Images for any purpose.

However, this seemingly unambiguous language is rendered ambiguous by additional language similar to that found in the MCA, United Paramount Network, and Polygram Records invoices, stating, "Michael Grecco Photography, Inc. retains the copyright to all photographs and the right to use any photographs for personal portfolio and promotional use." This ambiguity is compounded by Grecco's affirmative statement that he re-licensed the "X–Files" Images "with the active consent ... of the studios." (Grecco Decl. ¶¶ 7–8, Ex. A.) As with the license to Fox for the Luke Perry Image, if Grecco had to ask to Fox for consent, it implies that he granted Fox an exclusive license. Thus, summary judgment is denied as to the "X–Files" Images.

By contrast, Grecco's invoice to Fox for the Christina Applegate Image grants, "All rights for publicity and advertising for Fox Broadcasting only." Using the "rule of the last antecedent," the Court reads the word "only" to modify "Fox Broadcasting." Thus, the invoice seems to give Fox, and Fox alone, the right to use the Image. And again, Grecco states that he relicensed the Christina Applegate Image with the consent of the studio. These two factors seem to point in the direction of

exclusivity., albeit for publicity and advertising purposes only.

But there are countervailing features of the license that render the license ambiguous. For one thing, Fox does not appear to have been granted the exclusive right to one of the § 106 rights (copying, preparation of derivative works, distribution of copies or display). Rather, it is licensed to use Grecco's copyrighted image of Applegate for the limited purpose of publicity and advertising. Also, the invoice must be read together with T & C 1, which states, "Materials may not be reproduced, copied, projected, cannibalized or otherwise used without written consent." If Fox had to seek the written consent of Grecco before reproducing, displaying, or otherwise using the Christina Applegate Image, it implies that Grecco did not grant Fox exclusive rights in the Image. So the issue of exclusivity must be tried as to this license as well.

The invoices to USA Networks for the "Frankenstein" Images are the only licenses that use the word "exclusive." The invoices state, "Exclusive unlimited usage rights are granted to the client only." The words "exclusive" and "only" make it clear that these are exclusive licenses to USA Networks. Furthermore, USA Networks' rights are "unlimited"—unlike the rights to Fox, where use rights were granted for specific and limited purposes. This is clearly and unambiguously an exclusive license.

However, the license is no longer in force. T & C 2, which accompanied the USA Networks invoices, states, "Unless otherwise specifically stated on the front of this Agreement ... the duration of any license is one year from the date of Licensor's invoice." The invoices do not "otherwise specifically state" that their duration was to be for a period greater than one year. Therefore, licenses expired one year from the date of the invoices, Grecco regained all of its rights on July 14, 2005, when the year expired.

T & C 2 also states, "No electronic publishing or use of any kind is licensed unless specifically stated on the front of this Agreement." While the front of the agreements (the invoices) stated that USA Networks was receiving "unlimited usage rights," it did not specifically state that those "unlimited usage rights" included electronic usage rights. Thus, although the invoices gave USA Networks a one-year exclusive license in the "Frankenstein" Images, Grecco retained "all rights of publication, distribution, display or [t]ransmission in electronic and digital media." Since Grecco alleges that Everett displayed the "Frankenstein" Images on its website and distributed the Images, Grecco would have standing to enforce those allegedly infringing electronic uses of the "Frankenstein" Images—even if its licenses to USA Networks had not expired.

Defendant's motion for summary judgment is denied as to all licenses on the issue of exclusivity. Whether Grecco can be granted summary judgment in connection with the Frankenstein Images depends on whether Everett's copying of the Images was or was not de minimis.

### 3. Everett's Alleged Copying of the Images Was Not De Minimis

To establish copyright infringement, the owner of a valid copyright must demonstrate unauthorized copying. *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir.2003). To demonstrate unauthorized copying, plaintiff must show (1) that his work was actually copied and (2) that there is "substantial similarity" between his work and the copy. *Id.* "Substantial similarity"

 requires that the copying is quantitatively and qualitatively sufficient to support

the legal conclusion that infringement (actionable copying) has occurred. The qualitative component concerns the copying of expression, rather than ideas.... The quantitative component generally concerns the amount of the copyrighted work that is copied.

*Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70 (2d Cir.1997) (citation omitted), To establish the quantitative component of "substantial similarity," the amount copied "must be more than 'de minimis.'" *Castle Rock Entm't v. Carol Publ'g Group,* 150 F.3d 132, 138 (2d Cir.1998).

■ Everett is correct that "de minimis infringement of a copyrighted work is not actionable." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data. Inc.,* 166 F.3d 65, 71 (2d Cir.1999). However, in arguing that any alleged copying of Grecco's Images was *de minimis,* because out of twenty-three Images, Everett only distributed two to third parties for a total access fee of $300, Everett incorrectly relies on the *de minimis* copying doctrine.

Grecco alleges that Everett infringed its copyrights by displaying twenty-three of its Images on the Everett Collection website. Everett does not argue that these alleged displays were *de minimis* copying.[3] Indeed, such an argument would be rejected because displaying a complete, exact copy of a work on a website, and offering to license that complete, exact copy, is by no means *de minimis* infringement of Grecco's 17 U.S.C. § 106(5) right of display.

Grecco also alleges that Everett infringed its copyrights by distributing the Images to others. Even if Everett only distributed two of the Images to third parties, that is not *de minimis* infringement of Grecco's 17 U.S.C. § 106(4) right of distri-

bution. Grecco "is entitled to the separate legal protection of each of its" Images, and the fact that Everett did not distribute the other twenty-one Images "does not insulate it from liability." *Nihon,* 166 F.3d at 71. Furthermore, Everett's argument that it only received a total fee of $300 for distributing these two Images does not render its misuse of the Images *de minimis.* The concept of de minimis use relates to the amount copied from the work, not to the amount of money received for copying the work.

### 4. Grecco is Entitled to Summary Judgment of Liability for Everett's Display of the Frankenstein Images

■ Although the licenses to USA Networks for the "Frankenstein" Images are exclusive, those licenses have long since expired by their terms. Since Everett's copying of the "Frankenstein" Images was not *de minimis,* not only is Everett's motion for summary judgment as to those Images denied, but Grecco is entitled to summary judgment on the issue of liability for copyright infringement. *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.,* 378 F.Supp. 485 (S.D.N.Y.1974), *affd,* 509 F.2d 64 (2d Cir.1974).

### B. Violation of the Lanham Act & Unfair Competition Claims

Grecco alleges that Everett's use of the Images, placing the "Everett Collection" logo on each Image and not providing a photo credit to Grecco, falsely designated the origin of the Images in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act provides:

---

**3.** In fact, Everett does not even appear to dispute that it displayed the Images on its website.

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

 Everett argues that Grecco's Lanham Act claims are precluded by the unanimous Supreme Court decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003), because Grecco's claims are no more than claims of copyright infringement disguised as Lanham Act claims. I agree. Grecco's claim is that Everett copied twenty-three of its copyrighted works. "Since *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been clearly foreclosed." *Hudson v. Universal Studios. Inc.*, No. 04 Civ. 6997(GEL), 2008 WL 4701488, *8, 2008 U.S. Dist. LEXIS 86146, at *22 (S.D.N.Y. Oct. 23, 2008) (internal quotation omitted).

Section 43(a) of the Lanham Act protects against false designation of the origin of goods or services. In *Dastar*, the Supreme Court defined the concept of "the origin of goods" for Lanham Act purposes,

stating that it "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37, 123 S.Ct. 2041. In other words, under the Lanham Act, the "originator" of goods is the manufacturer or producer of the goods. Under the Copyright Act, on the other hand, "originator" refers to the author or owner of the copyright—"the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 32, 123 S.Ct. 2041. Thus, in *Dastar*, the Supreme Court dismissed a Lanham Act claim for false designation of origin because defendant had in fact produced and distributed the goods in question. *Id.* at 38, 123 S.Ct. 2041.

In this case, Everett acquired copies of the Images, of which Grecco claims to be the author and copyright owner. Everett then displayed the Images on its website, and distributed at least two of the Images to others. As in *Dastar*, Everett correctly identified itself as the originator of the website on which the Images appeared (through both its website name and the logo it placed over the Images). Grecco admits that Everett never claimed to be the author or copyright owner of the Images, and in fact informed its website users, "Everett is not the copyright holder of the images." (Pl. Resp. R. 56.1 Stmt. ¶ 21.) Thus, Grecco's Lanham Act claims fail.

Grecco argues that *Dastar* does not apply in this case because "*Dastar* stands for the proposition that the Lanham Act cannot be used to litigate copyright claims on a work which had fallen into the public domain." (Pl. Mem. at 10.) But in *Dastar*, the Supreme Court did not limit its holding to uncopyrighted material. Many courts, both in this district and others, have recognized that *Dastar* applies to

copyrighted material. *See, e.g., Silverstein v. Penguin Putnam, Inc.,* 522 F.Supp.2d 579 (S.D.N.Y.2007); *General Universal Sys., Inc. v. Lee,* 379 F.3d 131 (5th Cir. 2004); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't,* 392 F.Supp.2d 297 (D.Conn.2004); *Williams v. UMG Recordings, Inc.,* 281 F.Supp.2d 1177 (C.D.Cal. 2003).

To the extent that Grecco is asserting common law unfair competition claims, Everett argues that those claims also fail because they are "substantially congruent" to Grecco's Lanham Act claims. (Def. Mem. at 14.) Grecco does not counter this argument in its brief, and courts in this circuit have held that unfair competition claims "grounded solely in the copying of a plaintiff's protected expression" are also preempted by § 301 of the Copyright Act. *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993); *see also Silverstein,* 522 F.Supp.2d at 608–09. Section 301(a) of the Copyright Act provides:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title.... [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

Since Grecco's common law unfair competition claims are based solely on Everett's copying of the Images without attribution, they are merely disguised copyright claims that are preempted by § 301(a) of the Copyright Act. Therefore, summary judgment is granted in favor of Everett on Grecco's common law unfair competition claims.

## III. Conclusion

For the foregoing reasons, summary judgment is granted in favor of defendant on plaintiff's Lanham Act and common law unfair competition claims. Summary judgment is denied on plaintiff's copyright infringement claims, except the claims that relate to the "Frankenstein" Images, on which summary judgment is granted in favor of plaintiff on the issue of liability.